IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRANDON GORIN

    Plaintiff,

v.     Civil Case No. SAG-19-1207

VIVINT SOLAR DEVELOPER LLC

    Defendant

## MEMORANDUM OPINION

Plaintiff Brandon Gorin ("Gorin") filed this case against Defendant Vivint Solar Developer LLC ("Vivint"), alleging breach of express and implied warranties under the Magnuson-Moss Warranty Act. ECF 2. On May 1, 2019, Vivint filed a Motion to Stay and Compel Arbitration, ECF 5, along with a memorandum of law, ECF 5-1 (collectively, the "Motion"). Gorin opposed the motion ("Opposition"), ECF 6, and Vivint replied, ECF 12 ("Reply"). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, I will grant the Motion and stay the litigation.[1]

On or about February 2, 2016, Gorin entered a written agreement ("the Contract") for Vivint to design and install a residential solar power system ("the System") at his home in Maryland. ECF 5-3, Ex. B-1. The Contract provided that Vivint "will design, install, service, and maintain a solar photovoltaic system on Your home." *Id.* at 2. Under the Contract, Vivint would install, service, and maintain the System for a twenty-year term, and at the end of the term, Gorin could elect to:

---

[1] Plaintiff also filed a Motion for Leave to File Amended Complaint, ECF 7. Because the case will be stayed pending the outcome of the contractually required binding arbitration proceedings, that motion will be denied without prejudice.

> (1) continue with this Agreement for a renewal term of five (5) years at the Renewal Price (as described in Section 2(b)(ii)); (2) purchase the System (as described in Section 2(b)(iii)) and this Agreement will automatically terminate; or (3) have the System removed at no cost to You (as described in Section 2(b)(iv)) and this Agreement will automatically terminate.

*Id.* Other provisions of the Contract clearly indicated that Vivint retained ownership of the System during the twenty-year term. *See, e.g.*, *id.* at 3 ("This Agreement is for the sale of energy by Us to You and not for the sale of the System . . . ."); *id.* at 5 ("Any manufacturer's warranty is for Our benefit as owner of the System . . . .").

The Contract contained the following arbitration clause:

> (e) <u>Arbitration of Disputes.</u> PLEASE READ THIS PROVISION CAREFULLY. BY SIGNING BELOW, YOU ACKNOWLEDGE AND AGREE THAT, WITH LIMITED EXCEPTIONS, ANY DISPUTE BETWEEN US SHALL BE RESOLVED BY BINDING ARBITRATION. Arbitration is more informal than a lawsuit in court. In arbitration, disputes are resolved by an appointed arbitrator instead of a judge or jury. Therefore, by signing below, YOU ARE WAIVING THE RIGHT TO A TRIAL BY JURY.

*Id.* at 10. The Contract also set forth the requirements for pre-arbitration notice of the dispute and dispute resolution proceedings, the scope of the arbitration provision, and the procedures to be employed in arbitration. *Id.* at 10-12.

In the instant Motion, Vivint seeks to stay this proceeding and to compel binding arbitration pursuant to the Contract. ECF 5. In support of its position, Vivint cites to the Federal Arbitration Act ("FAA"), which provides, in relevant part,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3 (2012). In enacting the FAA, Congress intended to preempt various state laws that directly or indirectly undermine enforcement of parties' private arbitration agreements. *See, e.g., Southland Corp. v. Keating,* 465 U.S. 1, 11 (1984). Where a court concludes that a private arbitration agreement exists and controls a contested issue, the court may not consider the merits of the case, and must stay the litigation and order the parties to arbitration. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649 (1986). Specifically, a court must compel arbitration where it finds a valid written arbitration agreement and a dispute within the scope of the agreement. *See Glass v. Kidder Peabody & Co.,* 114 F.3d 446, 453 (4th Cir. 1997). Vivint contends that those elements are present in this case.

Gorin's opposition to binding arbitration of this dispute rests upon regulations enacted by the Federal Trade Commission ("FTC") to implement the Magnuson-Moss Warranty Act ("MMWA"). ECF 6-1. The MMWA provides, in relevant part:

> [A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief . . . .

15 U.S.C. § 2310(a)(1) (2012). The FTC's regulations interpreted the MMWA to ban "pre-dispute" binding arbitration. 16 C.F.R. § 703.5(j); 40 Fed. Reg. 60,168, 60,210 (Dec. 31, 1975). Under the FTC's regulations, parties must first engage in nonbinding dispute resolution before the warrantor can insist on binding arbitration. 40 Fed. Reg. at 60,211. The Fourth Circuit has opined that the FTC's regulatory ban on binding arbitration in MMWA cases is "intricate and limited, but it certainly exists." *Seney v. Rent-A-Center, Inc.*, 738 F.3d 631, 634 (4th Cir. 2013).

The remaining question, then, is whether the FTC's ban on binding arbitration applies in this case. By their own terms, the FTC's implementing regulations define the required "written warranty" as

3

> any written affirmation of fact or written promise made in connection with the sale of a consumer product to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time.

16 C.F.R. § 703.1(c). "Consumer product" is defined as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property . . . )." *Id.* § 703.1(b).

In *Seney*, the Fourth Circuit evaluated whether the FTC's arbitration ban applied to a warranty dispute regarding a bed that had been rented from Rent-A-Center ("RAC"), pursuant to a "Rental-Purchase Agreement." 738 F.3d at 632-33. The Rental-Purchase Agreement provided that the Seneys would rent the bed from RAC for two weeks, with an option to renew the lease for an additional six months. *Id.* at 632. Upon renewal for the full six months, RAC would transfer title to the Seneys, or, alternatively, the Seneys could opt to purchase the bed before the six months expired. *Id.* However, the Seneys alleged that the bed they received from RAC had bedbugs, and they filed a breach of warranty claim under the MMWA. *Id.* at 633.

Evaluating the contract between RAC and the Seneys, the Fourth Circuit determined that, "A promise – even a written promise – does not constitute a 'written warranty' under the regulations if it is not made 'in connection with a sale' or is not 'part of the basis of the bargain between a supplier and a buyer.'" *Id.* at 636. The Fourth Circuit noted that, under the Uniform Commercial Code, a "sale" involves "the passing of title from the seller to the buyer for a price." *Id.* (quoting U.C.C. § 2-106(1) (1977)). Title never passed to the Seneys, who understandably did not purchase or renew the lease for the bed they believed to be infested. Accordingly, the Fourth Circuit held:

> Because the Seneys have not linked RAC's warranty to any sale, they have failed to establish the existence of a "written warranty" under FTC regulations. Accordingly, their attempt to rely on these regulations, which presuppose a "written warranty," is unavailing. For this reason, the binding arbitration clause [in the Rental-Purchase Agreement] is enforceable . . . .

*Id.* at 638.

*Seney* is directly analogous to this case, because Gorin has also failed to establish the existence of a "written warranty" under the FTC's regulations banning arbitration. First, it is worth noting that Gorin's Complaint alleges that the warranty related to two "consumer products": (1) the System; and (2) the electricity produced by the System. ECF 2, ¶ 23. Title to the System, like title to the bed in *Seney*, never passed to Gorin. The fact that the Contract provided Gorin an option to purchase the System after expiration of the twenty-year term did not transform the operation of in the Contract into a sale. *See Seney,* 738 F.3d at 637 ("To be sure, the Seneys could have exercised their renewal or purchase options, at which point they might have become [bound to pay an amount equal to the purchase price of the bed]. But they had no *obligation* to exercise their options – nor did they elect to do so." (emphasis in original)). In the absence of a sale, Gorin cannot be deemed a "buyer."

As to whether the electricity produced by the System is a "consumer product," Gorin cites to *Singer Co., Link Simulation Systems Division v. Baltimore Gas & Electric Co.,* 79 Md. App. 461, 470-71 (1989), for the proposition that electricity constitutes a "consumer product" as defined by the MMWA and the FTC's regulations. However, *Singer* did not involve the MMWA, and instead decided "whether electricity remaining in a utility company's distribution system prior to being transformed into a useable state by passing through a customer's electric meter falls within the classification of 'goods' to which the Uniform Commercial Code (UCC), Title 2 of the Maryland Commercial Law Code Annotated is applicable." *Id.* at 464. Ultimately, the *Singer*

5

court decided that electricity in the utility company's distribution system is not a "good" under the UCC, but it did not reach the issue of whether electricity becomes a good when it is processed into a more marketable state. *Id.* at 471-72. However, even assuming *arguendo* that more marketable electricity constitutes a "good," not every "good" also constitutes a "consumer product" under the FTC's regulations, because a "consumer product" must be "tangible personal property." 16 C.F.R. § 703.1(b); *see also* 40 Fed. Reg. 25,721, 25,722 (June 18, 1975) (explaining that the term "consumer product" under the MMWA includes tangible items such as boats, clothing, jewelry, furniture, stereos, food, and fixtures to real property). Electricity is in no sense "tangible." Accordingly, because Gorin cannot point to a sale of a consumer product by Vivint, he cannot establish existence of a "written warranty" necessary to implicate the FTC's regulations. Thus, any arbitration bar found in those regulations is inapplicable to Gorin's claims.[2]

Turning back, then, to the requirements of the FAA for enforcing a private arbitration agreement, the undisputed facts of this case establish that the Contract involved interstate commerce, because Gorin is a Maryland resident and Vivint is a Delaware corporation based in Utah. ECF 2, ¶ 2. Both parties agree that they entered into the Contract, which contains an arbitration clause. *See* ECF 2, ECF 5-3. Finally, the scope of the arbitration clause encompasses Gorin's claims in this lawsuit. *See AT&T Techs.*, 475 U.S. at 650 (holding that there is a presumption of arbitrability, rebutted only where "it may said with positive assurance that the arbitration clause is not susceptible [to] an interpretation that covers the asserted dispute." (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable

---

[2] This Court need not determine whether Gorin's MMWA claim against Vivint is viable, because that issue is not presented by the instant Motion. ECF 5. Vivint seeks only to stay the litigation and to compel arbitration of Gorin's claims, and it is contractually entitled to that relief.

6

for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). Perhaps recognizing the breadth of the arbitration clause in the Contract, Gorin makes no argument that his claims fall outside its purview. *See* ECF 5-3 at 11 (requiring arbitration, in relevant part, of "any claim, dispute, or controversy arising out of or relating to (i) any aspect of the relationship between You and Us, whether based in contract, tort, statute, or any other legal theory"). Because all of the requirements of the FAA are met, this Court will stay the litigation until "arbitration has been had in accordance with the terms of" the Contract.[3] 9 U.S.C. § 3.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion to Stay Litigation and Compel Arbitration, ECF 5, will be GRANTED, and Plaintiff's Motion to File an Amended Complaint, ECF 7, will be DENIED without prejudice. A separate Order follows.

Dated: September 27, 2019

/s/
Stephanie A. Gallagher
United States District Judge

---

[3] Because the FTC's arbitration ban is inapplicable to the Contract, this Court need not address the inherent tension between the FAA and *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987), on the one hand, espousing "federal policy favoring arbitration," and the MMWA and the FTC's implementing regulations, on the other hand, which do not favor arbitration but are entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). In *Seney,* the Fourth Circuit noted that courts have divided on reconciling those competing positions, but determined that it "need not enter the fray" because the FTC's ban did not apply to the contract between the Seneys and RAC. *Seney,* 738 F.3d at 635. The Fourth Circuit has not resolved the issue in any of its subsequent cases.

7